FILED
CLERK
9:30 am, Oct 30, 2019
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
WALLACE G. WATSON,

                Plaintiff,

   -against-

NANCY A. BERRYHILL, Acting Commissioner
of Social Security,

                Defendant.
----------------------------------------------------------X

**MEMORANDUM OF DECISION & ORDER**
2:18-cv-1636 (ADS)

**APPEARANCES:**

**Olinsky Law Group**
*Attorneys for the Plaintiff*
250 South Clinton St., Suite 210
Syracuse, NY 13202
    By:   Howard D. Olinsky, Esq., Of Counsel.

**United States Attorneys Office, Eastern District of New York**
*Attorneys for the Defendant*
610 Federal Plaza
Central Islip, NY 11722
    By:   Mary M. Dickman, Esq., Assistant United States Attorney.

**SPATT, District Judge**:

On March 16, 2018, the Plaintiff Wallace G. Watson (the "Plaintiff" or the "Claimant") commenced this appeal pursuant to the Social Security Act, 42 U.S.C. § 405 *et seq.* (the "Act"), challenging a final determination by the Defendant, Nancy A. Berryhill, the then Acting Commissioner of the Social Security Administration (the "Defendant" or the "Commissioner"), that he was ineligible to receive Social Security disability benefits or Supplemental Security Income benefits.

Andrew M. Saul is now the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P.") 25(d), Saul is hereby

1

substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this action. *See, e.g., Pelaez v. Berryhill*, No. 12-CV-7796, 2017 WL 6389162 (S.D.N.Y. Dec. 14, 2017), *adopted by*, 2018 WL 318478 (S.D.N.Y. Jan. 3, 2018).

Presently before the Court are the parties' cross motions, pursuant to FED. R. CIV. P. 12(c) for a judgment on the pleadings. For the reasons that follow, the Plaintiff's motion is granted in part, the Defendant's cross-motion is denied, and the matter is remanded for further proceedings.

## I.  BACKGROUND

The Plaintiff is a 55-year-old man with an associate's degree in culinary training. He most recently worked as the head chef at a deli.

On October 15, 2013, the Plaintiff applied for disability insurance benefits under §§ 216(i) and 223 of the Act, and for supplemental security income under § 1614(a)(3)(A) of the Act. The Plaintiff alleged he had been disabled since November 17, 2011 because of a knee injury, sleep apnea, Carpal tunnel syndrome, a bulging disc, lower back pain, and non-functioning eardrums, all stemming from a motor vehicle accident on that date.

His claim was denied on February 25, 2014, and he requested a hearing. The Plaintiff appeared with counsel before Administrative Law Judge Patrick Kilgannon (the "ALJ") on February 3, 2016 and August 18, 2016. On September 21, 2016, the ALJ issued a decision finding that the Plaintiff was not disabled.

The Plaintiff sought a review by the Appeals Council, and on January 12, 2018, the Appeals Counsel ruled that it would not further review the ALJ's decision. The ALJ's decision thus became the final decision of the Commissioner upon the Appeals Council's denying the Plaintiff's request for review.

On March 16, 2018, the Plaintiff filed the present action. On February 1, 2019, the parties submitted the Plaintiff's Rule 12(c) motion and the Defendant's Rule 12(c) cross-motion as fully briefed to the Court.

For purposes of these motions, familiarity with the underlying administrative record is presumed. The Court's discussion of the evidence will be limited to the specific challenges and responses presently raised by the Plaintiff and the Defendant. In this regard, references to the record are denoted as "R."

## II. DISCUSSION

Briefly, the parties have presented one issue for the Court: whether there was substantial evidence to support the ALJ's conclusion as to the Plaintiff's residual functional capacity. The Court rules that the ALJ's finding is not supported by substantial evidence, and that the ALJ should have recontacted the Plaintiff's treating physician for clarifying information. Thus, for the reasons that follow, the Court grants the Plaintiff's Rule 12(c) motion in part, denies the Defendant's Rule 12(c) cross-motion in its entirety, and remands the case for further proceedings.

### A. The Standard for Benefits Under the Act

The Act defines the term "disability" to mean an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person may only be disabled if his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In determining whether a person is disabled, the Commissioner is required to apply the five-step sequential process promulgated by the Social Security Administration, set forth in 20 C.F.R. § 404.1520. *See Rosa v Callahan*, 168 F.3d 72, 77 (2d Cir. 1999). The Plaintiff bears the burden of proving the first four steps, but then the burden shifts to the Commissioner at the fifth step to prove that the Plaintiff is capable of working. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam); *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008); *Rosa*, 168 F.3d at 77. *See also Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) ("If the claimant satisfies her burden of proving the requirements in the first four steps, the burden then shifts to the [Commissioner] to prove in the fifth step that the claimant is capable of working."). "If at any step a finding of disability or non-disability can be made, the [Social Security Administration] will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24, 124 S. Ct. 376, 379, 157 L. Ed. 2d 333 (2003).

> Under the five-step sequential evaluation process, the decision-maker decides:
>
> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); 20 C.F.R. §§ 404.1520, 416.920. When conducting this analysis, the ALJ must consider the objective medical facts; the diagnoses or medical opinions based on these facts; the subjective evidence of pain and disability; as well as the plaintiff's age, background, education and work experience. *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam).

## B. The Standard of Review

"Judicial review of the denial of disability benefits is narrow" and "[t]he Court will set aside the Commissioner's conclusions only if they are not supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Koffsky v. Apfel*, 26 F. Supp. 2d 475, 478 (E.D.N.Y. 1998) (Spatt, *J.*) (citing *Bubnis v. Apfel*, 150 F.3d 177, 179–71 (2d Cir. 1998)); *accord Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); 42 U.S.C. § 405(g). *See also Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). The ALJ is required to set forth those crucial factors used to justify his or her findings with sufficient particularity to allow the district court to make a determination regarding the existence of substantial evidence. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

Accordingly, "the reviewing court does not decide the case *de novo*." *Pereira v. Astrue*, 279 F.R.D. 201, 205 (E.D.N.Y. 2010) (citing *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)). Rather, "the findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive," *id.* (citing 42 U.S.C. § 405(g)), and therefore, the relevant question is not "whether there is substantial evidence supporting the [plaintiff's] view;" instead, the Court "must decide whether substantial evidence supports *the ALJ's decision*," *Bonet v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (Summary Order) (emphasis in original). In this way, the "substantial evidence" standard is "very deferential" to the Commissioner, and allows courts to reject the ALJ's findings "'only if a reasonable factfinder would *have to conclude otherwise.*'" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994) (emphasis in original)). This deferential

standard applies not only to factual determinations, but also to "inferences and conclusions drawn from such facts." *Pena v. Barnhart*, No. 01-CV-502, 2002 WL 31487903, at *7 (S.D.N.Y. Oct. 29, 2002) (citing *Levine v. Gardner*, 360 F.2d 727, 730 (2d Cir. 1966)).

"Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Burgess v. Astrue*, 537 F.3d 117, 127–28 (2d Cir. 2008) (quoting *Halloran*, 362 F.3d at 31); *accord Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L Ed. 2d 842 (1971); *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S. Ct. 456, 464, 95 L. Ed. 456 (1951)).

An ALJ's findings may properly rest on substantial evidence even where he or she fails to "recite every piece of evidence that contributed to the decision, so long as the record 'permits [the Court] to glean the rationale of an ALJ's decision.'" *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (per curiam) (quoting *Mongeur*, 722 F.2d at 1040). This remains true "even if contrary evidence exists." *Mackey v. Barnhart*, 306 F. Supp. 2d 337, 340 (E.D.N.Y. 2004) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998)).

C. **The Rule 12(c) Standard**

Both parties filed Rule 12(c) motions. ECF 13, 15. Such motions are reviewed under the same standard as Rule 12(b)(6) motions to dismiss. *See Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). "To survive a Rule 12(c) motion, the complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

face.'" *Id.* (quoting *Hayden v. Peterson*, 594 F.3d 150, 160 (2d Cir. 2010). The issue on a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)). "'Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 129 S. Ct. 1937, 1949–50, 173 L. Ed. 2d 868 (2009)).

### D. Application to the Facts of This Case

The Plaintiff asks in his Rule 12(c) motion for the Court to vacate the final administrative decision in his action and remand it for further administrative proceedings. ECF 12. The Plaintiff asserts that the ALJ gave significant weight to the opinion of consultative physician Dr. Linell Skeene, MD, even though Dr. Skeene's opinion did not comport with the ALJ's ruling; the ALJ erred in according only little weight to the opinion of the Plaintiff's treating physician Dr. Hasib Sarij, M.D; and, that to the extent that the ALJ found Dr. Sarij's opinion to be vague and/or inconsistent, the ALJ could have recontacted Dr. Sarij for more information; sought an opinion from the Plaintiff's primary care physician, Dr. Adam Carpentieri, D.O.; obtained an updated consultative exam; or consulted with a medical expert. *Id.* at 13–20.

In its Rule 12(c) cross-motion, the Defendant asks that the Court affirm the Commissioner's determination. ECF 16-1. The Defendant contends that the ALJ acknowledged that the Plaintiff has severe impairments and then reasonably determined that those limitations were not severe enough to render him totally disabled. Also, Dr. Skeene's opinion was consistent with the clinical evidence and examination results. To the extent the ALJ's residual

7

functional capacity assessment diverged from Dr. Skeene's opinion, it was because of the ALJ's incorporating additional limitations into the residual functional capacity finding. Also, Dr. Sarij's opinion was vague, inconsistent with clinical evidence, and internally inconsistent with his own findings. Further, The ALJ cited to numerous medical records supporting his decision. *Id.* at 22–25.

**1. The Interplay Between Treating Physicians and Consultative Physicians**

Under the treating physician rule, the opinion of a claimant's treating physician as to the nature and severity of the claimant's impairments is given "controlling weight" so long as it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2)); *Bonneau v. Astrue,* No. 5:13-cv-26, 2014 WL 31301, at *5 (D. Vt. Jan. 3, 2014) (same).

Although the Court is generally required to defer to the medical opinion of a treating physician, *see Schisler v. Sullivan*, 3 F.3d 563, 567–68 (2d Cir. 1993), those findings may not be accorded controlling weight if they are inconsistent with other substantial evidence, including the opinions of other medical experts, *Burgess*, 537 F.3d at 128. The ALJ must consider the following factors if it decides to afford less than controlling weight to the treating physician's opinion: "(1) the frequen[c]y, length, nature, and extent of the treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013).

In order for the Court to determine whether a treating physician's opinion is consistent with other substantial evidence in the administrative record, the Court must keep in mind that

8

"genuine conflicts in the medical evidence are for the ALJ to resolve." *Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010) (Summary Order); *see also Garcia v. Barnhart*, No. 01-CV-8300, 2003 WL 68040, at *7 (S.D.N.Y. Jan. 7, 2003) (holding that the ALJ cannot substitute his or her "own assessment of the relative merits of the objective evidence and subjective complaints for that of a treating physician").

In the Second Circuit, an ALJ is entitled to rely on the opinions of consultative examining physicians, as they may constitute substantial evidence, if the administrative record supports them. *See Rosier v. Colvin*, 586 F. App'x 756, 758 (2d Cir. 2014) (Summary Order); *Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) (Summary Order) ("The report of a consultative physician may constitute [] substantial evidence,"); *Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995); *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) (per curiam) ("It an accepted principle that the opinion of a treating physician is not binding if it is contradicted by substantial evidence, and the report of a consultative physician may constitute such evidence." (internal citations omitted)); *Frawley v. Colvin*, No 13-CV-1567, 2014 WL 6810661, at *9 (N.D.N.Y. Dec. 2, 2014) ("The opinions of consultative examiners . . . may constitute substantial evidence where, as here, it is supported by the medical evidence in the record."). An ALJ is permitted to accord greater weight to a consultative examiner's opinion if the conclusions are more consistent with the medical evidence than that of a treating physician. *See Artinian v. Berryhill*, No. 16-CV-4404, 2018 WL 401186, at *10 (E.D.N.Y. Jan. 12, 2018) (Spatt, *J.*); *Rivera v. Colvin*, No, 13-CV-7150, 2015 WL 1027163, at *16 (S.D.N.Y. Mar. 9, 2015).

A consultative physician may not base her opinion solely upon general language describing a claimant's residual functional capacity. *See, e.g., Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 348 (E.D.N.Y. 2010) (holding that the consultative examiner's "statement

9

that [the] plaintiff had 'limitations of a mild degree of lifting, bending, walking, standing, and pushing and pulling on arm controls'" could not "serve as an adequate basis for determining [the] [p]laintiff's RFC" because it "did not provide enough information to allow the ALJ to make the necessary inference that [the] [p]laintiff could perform sedentary work"); *see also Ubiles v. Astrue*, No. 11-CV-6340, 2012 WL 2572772, at *11 (W.D.N.Y. July 2, 2012). Another court in the Eastern District had similarly ruled as to Dr. Skeene, the consultative physician in this case:

> Dr. Skeene opined that Plaintiff has "moderate limitations for general activity." This assessment is too vague to provide sufficient support for the ALJ's specific functional assessments that Plaintiff could, for example, carry ten pounds occasionally and less than ten pounds frequently and sit for six hours during an eight-hour workday.

*Simmons v. Colvin*, No. 15-CV-0377, 2016 WL 1255725, at *14 (E.D.N.Y. Mar. 28, 2016) (internal citations omitted).

### 2. The ALJ's Findings

Here, in summary, the ALJ ruled that the Plaintiff had the residual functional capacity to perform sedentary work because he could: lift up to ten pounds occasionally; stand or walk for approximately two hours per eight-hour workday; sit for approximately six hours per eight-hour workday; occasionally balance, stoop, kneel, crouch, and crawl; and, occasionally climb ramps or stairs. R. at 24. In addition, the ALJ ruled that the Plaintiff could not climb ladders, ropes, or scaffolds; that he should avoid exposure to unprotected heights and moving machinery; and, that he was limited to jobs that do not require a fine hearing capacity. *Id.*

The ALJ considered, *inter alia*, the following evidence. As to the Plaintiff's back, the ALJ noted that the Plaintiff had a history of herniated disc stenosis, as well as injuries from the November 2011 car accident, and that he had received periodic treatments from Dr. Shuriz Hishmeh, M.D. R at 25–26. The ALJ observed that the Plaintiff would often go a full year or

more between visits to Dr. Hishmeh, and that throughout this time, Dr. Hishmeh repeatedly recommended against surgical intervention and in favor of conservative treatments, such as physical therapy, pain medication, and exercise. *Id.* at 26, 569–94. Similarly, the ALJ examined the treatment records for the Plaintiff's knees and noted that, despite the Plaintiff's having significant damage to both knees, his doctors recommended conservative treatments of physical therapy, pain medication, and the receipt of cortisone and Synvisc injections, to which the Plaintiff responded positively. *Id.* at 27, 345–56.

The ALJ further examined the Plaintiff's diabetes and feet numbness, noting that the Plaintiff's treatment records showed decreased glucose and hemoglobin records, as well as a lower weight, when the Plaintiff was "compliant with diet and exercise." *Id.* at 27–28, 561–64. However, the ALJ observed that once the Plaintiff had stopped exercising and following a healthy diet, he reported foot numbness, along with elevated glucose and hemoglobin levels, and a higher weight. *Id.* at 28, 636–39. The ALJ considered the Plaintiff's lifelong history of ear infections and the placement of pressure-equalizing tubes in his ears, noting that testing on the Plaintiff's ears revealed a moderate hearing loss. *Id.* at 28, 535–47. As to sleep apnea, the ALJ observed that while the Plaintiff received treatment at a sleep disorder center and required the nightly use of a Continuous Positive Airway Pressure ("CPAP") machine, he did not have any cardiovascular complications. *Id.* at 28–29. Further, the ALJ made note of the Plaintiff's weight, saying that with a height of five feet and nine inches, and with a weight of between 292 and 308 pounds, the Plaintiff was morbidly obese, and his "condition may have an adverse impact upon co-existing impairments." *Id.* at 29.

The ALJ summarized the Plaintiff's exam with Dr. Skeene as being "predominantly unremarkable." *Id.* The Plaintiff was unable to squat fully; he showed a limited range of motion

11

of the lumbar spine and left knee; and, an X-ray showed evidence of degenerative changes in the lumbar spine. *Id.* at 29, 364–67. However, The Plaintiff was in no acute distress; his gait and stance were normal; he did not need a device to help him walk; he had a normal range of motion in the rest of his body, including the right knee; X-rays of his right knee revealed normal results; he showed no sensory problems; and, he had full strength in his lower extremities. *Id.* at 29, 364, 368. Based on these results, Dr. Skeene opined that the Plaintiff had moderate limitations for general activity because of moderate hearing loss. *Id.* at 30, 365.

The ALJ assigned "significant weight" to Dr. Skeene's opinion, though he was not as confident as Dr. Skeene was in the Plaintiff's physical capacity. *Id.* at 30. He reasoned that:

> This opinion was also generally consistent with the clinical evidence of record, which showed that the claimant had bilateral hearing loss, and was limited to occupations that did not require fine hearing capability. The opinion was also consistent with Dr. Skeene's own examination result of the claimant, which showed normal gait and no use of any assistive devices. However, the undersigned notes that the claimant was only capable of performing sedentary exertion level work, with additional limitations, based on the remainder of the claimant's impairments.

*Id.* Conversely, the ALJ assigned "only little weight" to two opinions from Dr. Sarij. *Id.* at 30–31. In the first opinion, Dr. Sarij contended that the Plaintiff could sit for only zero to one-hour in an eight-hour workday; could occasionally lift and/or carry up to ten pounds and frequently lift and/or carry up to five pounds; had moderate limitations in using his upper extremities; could not perform a job requiring him to keep his neck in a constant position; and, that overall, the Plaintiff was incapable of performing even a low stress job, and that he would be absent from work more than three times per month as a result of his impairments. *Id.* at 30–31, 654–61. The ALJ reasoned that the "questionnaire is accorded only little weight because the questionnaire is not nearly as limited as the doctor opined." *Id.* at 31.

The second opinion came after a June 2016 appointment with the Plaintiff. *Id.* at 608. There, Dr. Sarij said that the Plaintiff was 100 hundred percent disabled because of his spine impairments; that the Plaintiff was unable to engage in any meaningful work activity; and, that regardless, the Plaintiff was still able to perform tasks of daily living. *Id.* The ALJ ruled that the opinion was vague because it failed "to adequately define any specific functional limitations of the claimant," and that it inconsistent with the evidence in the record, and it was internally inconsistent because the opinion said the Plaintiff could perform daily living tasks. *Id* at 31.

### 3. As to Whether the ALJ Applied The Proper Weight to Dr. Skeene's and Dr. Sarij's Opinions

The Court rules that Dr. Skeene's opinion did not provide substantial evidence in support of the ALJ's decision. The evidence in the record suggests that while the Plaintiff has several physical impairments, he is not incapable of doing sedentary work. Neither Dr. Skeene nor Dr. Sarij gave such a recommendation in their opinions: Dr. Skeene was less concerned about the Plaintiff's impairments, while Dr. Sarij placed a greater emphasis upon them.

As to Dr. Skeene, the sum total of his opinion was that the claimant had moderate limitations for general activity because of his partial hearing loss; this opinion is not specific enough to be the basis for the ALJ's residual functional capacity decision. *See Selian*, 708 F.3d at 421; *Simmons*, 2016 WL 1255725, at * 14; *see also Ubiles*, 2012 WL 2572772, at *11. The opinion did not address whether or not the Plaintiff would be able to sit or stand for long periods. *See Simmons*, 2016 WL 1255725, at *14 ("Moreover, even where courts have approved of an ALJ's assignment of significant weight to findings by a consultative physician of 'moderate' limitations, such assessments have directly considered a plaintiff's capacity to, for example, sit or stand for long periods."); *Nelson v. Colvin*, No. 12-CV-1810, 2014 WL 1342964, at *12 (E.D.N.Y. Mar. 31, 2014).

13

Dr. Skeene commented on the Plaintiff's ability to walk and to rise from his chair, but he did not specifically tie these observations to the Plaintiff's ability to perform sedentary work. *See Simmons*, 2016 WL 1255725, at *14 ("Here, Dr. Skeene merely opined that Plaintiff had moderate limitations to [the Plaintiff's] abilities with respect to 'general activity,' which does not provide substantial evidence to support the ALJ's RFC determination that Plaintiff can perform the full range of sedentary work") (internal citations omitted). These tangential references to the Plaintiff's ability to sit and stand do not merit according significant weight to Dr. Skeene's opinion. *See id.*; *see also Christiansen v. Colvin*, No. 15-CV-2932, 2016 WL 4384722, at *8 (E.D.N.Y. Aug. 15, 2016).

**4. As to Whether the ALJ Should Have Recontacted The Plaintiff's Physicians**

Where there are deficiencies in the administrative record, an ALJ is under an affirmative obligation to develop a plaintiff's medical history, even when the plaintiff is represented by counsel. *Rosa*, 168 F.3d at 79. This obligation arises from the "essentially non-adversarial nature of a benefits proceeding." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (internal quotation marks omitted).

However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa*, 168 F.3d at 79 n.5 (internal quotation marks omitted); *see Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (Summary Order) (citing case law from other circuits for the proposition that "remand is not always required when an ALJ fails in his duty to request opinions, particularly where as here, the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity"); *Micheli v. Astrue*, 501 F. App'x 26, 30 (2d Cir. 2012) (Summary

Order) ("Here, the ALJ properly determined that he could render a decision based on the 500-page record already before him.").

An ALJ has "discretion to 'determine the best way to resolve the inconsistency or insufficiency'" when an ambiguity arises concerning a treating physician's opinion. *Rolon v. Comm'r of Soc. Sec.*, 994 F. Supp. 2d 496, 505 (S.D.N.Y. 2014) (quoting 20 C.F.R. § 416.920b). While regulations have been amended to remove the provision requiring an ALJ to recontact a treating physician in the face of an ambiguity, *Quinn v. Colvin*, 199 F. Supp. 3d 692, 709 (W.D.N.Y. 2016), they still "contemplate the ALJ recontacting the treating physician when the additional information needed is directly related to that medical source's opinion." *Owens v. Berryhill*, No. 17-CV-2632, 2018 WL 1865917, at *7 (E.D.N.Y. Apr. 18, 2018) (Spatt, *J.*) (internal quotation marks omitted); *Jimenez v. Astrue*, No. 12-CIV-3477, 2013 WL 4400533, at *11 (S.D.N.Y. Aug. 14, 2013).

The ALJ assigned little weight to Dr. Sarij's opinions on the bases of vagueness, their inconsistency with the record, and internal inconsistencies. R. at 30–31. On one hand, the ALJ correctly applied little weight to Dr. Sarij's opinion that the Plaintiff could only perform low stress work, because Dr. Sarij is not a psychiatrist, and an ALJ does not need to give substantial weight to opinions that exceed a physician's specialty. *See Muro v. Berryhill*, No. 17-cv-6092, 2019 WL 4933612, at *8 (E.D.N.Y. Oct. 7, 2019) (Spatt, *J.*) (concluding that an ALJ did not need to place special weight on a psychiatrist's opinion as to a claimant's hyperthyroid condition); *Arbello v. Comm'r of Soc. Sec.*, No. 18-CV-982, 2019 WL 1384094, at *14 (E.D.N.Y. Mar. 27, 2019) ("Because Dr. Adam is a psychiatrist, the ALJ was not required to give significant weight to his opinion about how lupus would physically impact her ability to

15

work."); *Mercado v. Berryhill*, No. 16-CV-6087., 2017 WL 3328177, at *14 (S.D.N.Y. Aug. 3, 2017) (giving little weight to a podiatrist's opinion on the plaintiff's neck, back, and knee).

On the other hand, the ALJ should have recontacted Dr. Sarij for clarifying information as to his assertion that the Plaintiff was 100 percent disabled, despite being able to perform daily living tasks. *See Destina v. Berryhill*, No. 17-cv-2382, 2018 WL 4964103, at *6 (E.D.N.Y. Oct. 15, 2018) (Spatt, *J.*) ("If the ALJ believed that there was a discrepancy in the physician's opinions, he should have exercised his discretion to develop the record to resolve any conflict."); *Isernia v. Colvin*, No. 14-CV-2528, 2015 WL 5567113, at *12 (E.D.N.Y. Sept. 22, 2015) ("Thus, in light of the ALJ's conclusion that Dr. Buncke's opinion was vague and inconsistent with prior treatment notes, a remand is necessary so that Dr. Buncke can be recontacted and given the opportunity to supplement the record with any additional clarification or bases for her findings regarding plaintiff's disability.").

Recontacting Dr. Sarij is justified for reasons beyond inconsistencies in his opinion. Unlike Dr. Skeene, Dr. Sarij did comment on the Plaintiffs ability to sit and stand throughout an eight-hour workday, which gives his opinion more significance. *See Morris v. Berryhill*, 721 F. App'x 25, 28 (2d Cir. 2018) (Summary Order) ("The duty to recontact arises only if the ALJ lacks sufficient evidence in the record to evaluate the doctor's findings."). Thus, Dr, Sarij's opinion also is central to the issue of whether the Plaintiff can perform sedentary work. *See Owens*, 2018 WL 1865917, at *7.

The Court further rules that at this juncture there is no present basis for contacting Dr. Carpentieri. Though his treatment notes with the Plaintiff appear in the record, *R.* at 468–534, the ALJ did not consider those notes in his opinion. Thus, there is no ambiguity for the ALJ to resolve from Dr. Carpentieri on remand; however, the ALJ has the discretion to further develop

16

the record if such exploration is required. *See Thomas v. Comm'r of Soc. Sec.*, No. 15-CIV-3348, 2016 WL 4398518, at *5 (E.D.N.Y. Aug. 17, 2016).

The Plaintiff's remaining claim, that the ALJ should have sought an updated consultative exam or reached out to a medical expert, is without merit. Under these circumstances, an ALJ is under no obligation to consult with a medical expert. *See Gonzalez v. Colvin*, No. 15-CV-2159, 2016 WL 5477591, at *12 n.3 (E.D.N.Y. Sept. 28, 2016) ("[A]lthough ALJs may consult medical experts, they are not required to do so."); *see also Cole v. Astrue*, No. 06-CV-769, 2013 WL 4398974, at *4 (S.D.N.Y. Aug. 7, 2013) ("Plaintiff provides no support for his claim that [the ALJ] was *required* to consult an expert in addition to reviewing the medical evidence in the record.") (emphasis in original). Further, on remand, the ALJ will have the discretion, but not the obligation, to seek an updated consultative examination of the Plaintiff. *See Faith Grace P. v. Saul*, No. 18-CV-781, 2019 WL 4305484, at *7 (N.D.N.Y. Sept. 11, 2019); *Bailey v. Astrue*, 815 F. Supp.2d 590, 599 (E.D.N.Y. 2011).

### III. CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's Rule 12(c) motion in part, as to the ALJ's rulings on Dr. Skeene's and Dr. Sarij's opinions. It denies the motion as to the Plaintiff's requests for the ALJ to contact Dr. Carpentieri; seek an updated consultative examination; or consult with a medical expert. The Court also denies the Defendant's Rule 12(c) cross-motion in its entirety. The case is remanded for further proceedings.

The Clerk of Court is respectfully directed to close the case.

It is **SO ORDERED.**

_____/s/ Artur D. Spatt_____          _____October 30, 2019_____

Arthur D. Spatt, U.S.D.J.                                    Date